NOLL, Appellant, vs. NUGENT, Respondent.

*January 10—February 6, 1934.*

For the appellant there were briefs by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann*.

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat*.

FRITZ, J. It appears, without dispute, that on May 9, 1928, plaintiff sustained injury to an ankle in a fall on a

defective walk maintained by George L. Baldauf, against whom she made a claim for the damages which she sustained by reason of his negligence. The defendant Nugent administered proper medical treatment for the injured ankle until plaintiff was discharged as cured, on September 4, 1928. On April 26, 1929, she settled her claim against Baldauf for $700 and, in consideration of that payment, she executed a release, which, so far as here material, provided that she released and forever discharged "the said George L. Baldauf of and from all claims, demands, damages, actions, cause of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by said George L. Baldauf prior to and including the date hereof, and particularly on account of all injuries both to person or property resulting, or to result, from an accident which occurred on or about the 9th day of May, 1928, at Milwaukee, Wisconsin."

In December, 1929, she returned to the defendant for further treatment of the ankle and, while he was administering a diathermic heat treatment on January 28, 1930, she sustained injuries by reason of the excessive application of heat, which resulted in the damages which she seeks to recover in this action.

On the trial the court overruled defendant's motions for a nonsuit, and for a directed verdict. In a special verdict the jury found that the defendant was negligent in administering the diathermic heat treatment on January 28, 1930, and that such negligence was a proximate cause of the injuries sustained by plaintiff as the result of that treatment. On defendant's motions after verdict, as also on this appeal, defendant contended that the evidence does not sustain the jury's finding that the defendant's negligence in administering the treatment was a proximate cause of plaintiff's injury. The trial court overruled that contention. As defendant served no notice to review under sec. 274.12, Stats., he is not

entitled on this appeal to raise the question as to the sufficiency of the evidence to sustain that finding. However, upon reviewing the record in relation to that contention, we find no error in that respect.

On the other hand, the court ruled that the release of Baldauf on April 26, 1929, prior to the defendant's malpractice on January 28, 1930, operated as a release of the claim against the defendant Nugent for the damages which she sustained by reason of his malpractice on January 28, 1930. That ruling is challenged by plaintiff on her appeal. It is true that in form the release involved in this action is substantially like those involved in *Hooyman v. Reeve,* 168 Wis. 420, 170 N. W. 282, and in *Retelle v. Sullivan,* 191 Wis. 576, 211 N. W. 756. However, in those cases the malpractice, in treating injuries previously caused by the negligence of another tortfeasor, occurred prior to the settlement and release of that tortfeasor. The distinguishing circumstance that in this case the defendant's malpractice did not occur until nine months after the release of Baldauf was not considered by the trial court sufficient to remove this case from the effect of the rule in the *Hooyman* and *Retelle Cases.*

At the outset it must be noted that, even if the defendant's malpractice had occurred prior to plaintiff's release of Baldauf, the latter and defendant would not have been joint tortfeasors. There was no concurring negligence and, consequently, no common liability on their part. Under those circumstances there arose no right of contribution as between them. As this court said in relation to the liability of a physician (Rumph), whose malpractice occurred prior to the settlement of a claim for personal injury by the first tortfeasor (the Light Company), which was liable therefor:

"They are not in any sense of the term joint tortfeasors. The liability of the defendant Rumph to the Light Company

does not arise by reason of his liability for contribution in the event of a recovery against the Light Company. His liability is a liability over, and arises in favor of the Light Company by reason of the fact that the Light Company is compelled to pay damages which are primarily due to the alleged negligence of the defendant Rumph and for which the plaintiff might have maintained an action against the defendant Rumph. The Light Company, being compelled to pay these damages, is subrogated to the plaintiff's rights against Rumph, as she may not twice recover compensation for the same injury." *Fisher v. Milwaukee E. R. & L. Co.* 173 Wis. 57, 60, 180 N. W. 269.

Obviously, if upon settling with the claimant the first tortfeasor becomes subrogated to the claimant's rights against the physician, whose malpractice prior to the settlement aggravated the claimant's injuries and enhanced his damages, then that settlement cannot be deemed to have operated as a discharge of the claimant's cause of action against the physician. That cause of action to recover from the physician on account of the malpractice theretofore committed by him continues to exist notwithstanding the release of the first tortfeasor, but by virtue of the first tortfeasor's right to subrogation, that cause of action becomes vested in that first tortfeasor, because the damages for which he was liable include the enhancement thereof by reason of the physician's malpractice prior to the settlement. The claimant may not twice recover compensation for the same injury, but the first tortfeasor, who has settled with the claimant, and therefore stands in the shoes of the claimant, may enforce the claimant's right to compensation from the physician, because the settlement by the first tortfeasor is presumed in law to have included compensation for the injury occasioned by malpractice, which was committed before the release of a prior tortfeasor. That presumption is conclusive unless, in releasing the prior wrongdoer, there is saved to the injured person his cause of action against the physician by the use

of some appropriate provision in the release by which that settlement was effected, or by a covenant not to sue.

However, as in the case at bar there was no malpractice on the part of the defendant until nine months after Baldauf settled with plaintiff on April 26, 1929, there existed up to that time no injury for which the payment then made by Baldauf can be deemed, in fact or in law, to have constituted compensation to plaintiff. Nothing was in fact paid by Baldauf, or received by the plaintiff, on account of the then unanticipated future malpractice of the defendant. Although Baldauf, by reason of the settlement which he made on April 26, 1929, would have become entitled by right of subrogation to any existing cause of action for malpractice—if the plaintiff had then had such a cause of action for malpractice in treating injuries for which Baldauf was liable,—it does not follow, and there is no sound reason for holding Baldauf likewise entitled by subrogation to a cause of action which accrued in plaintiff's favor for malpractice committed by defendant after April 26, 1929, or for holding plaintiff's release of Baldauf on that day operated to discharge defendant from plaintiff's cause of action for that subsequent malpractice.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment upon the verdict for the recovery by plaintiff of the damages assessed by the jury.