**STATE of Iowa ex rel. Thomas J. MILLER, in His Capacity as Attorney General of Iowa, Appellant,**

v.

**PHILIP MORRIS INC. (Philip Morris U.S.A.); Philip Morris Companies, Inc.; R.J. Reynolds Tobacco Co.; Brown & Williamson Tobacco Corporation, Individually and as Successor by Merger to the American Tobacco Co.; Lorillard Tobacco Co.; Lorillard Inc.; United**

---

States Tobacco Co.; UST, Inc.; The Council For Tobacco Research—U.S.A., Inc.; Hill & Knowlton, Inc.; The Brooke Group, Ltd.; Liggett & Myers, Inc.; Liggett Group, Inc.; and British American Tobacco Company, Ltd., Appellees,

RJR Nabisco, Inc.; American Brands, Inc.; B.A.T. Industries, PLC; Batus Holdings, Inc.; British–American (Holdings) Ltd.; Loews Corporation; and The Tobacco Institute, Inc., Defendants.

No. 97–1683.

Supreme Court of Iowa.

April 22, 1998.

Thomas J. Miller, Attorney General, E. Ralph Walker of the Walker Law Firm, P.C., Des Moines, Steven P. Wandro of Wandro & Gibson, P.C., Des Moines, Roger W. Stone of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, Brent R. Appel of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, and Glenn Norris of Hawkins & Norris, Des Moines, for appellant.

Robert A. Van Vooren and Thomas D. Waterman of Lane & Waterman, Davenport, and Dan K. Webb, Thomas J. Frederick, Kurt L. Schultz, and Kevin J. Narko of Wintson & Strawn, Chicago, Illinois, for appellees Philip Morris Incorporated and Philip Morris Companies, Inc.

Steven L. Nelson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, and Thomas F. Gardner of Jones, Day, Reavis & Pogue, Chicago, Illinois, for appellee R.J. Reynolds Tobacco Company.

Roger T. Stetson of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, and Andrew R. McGaan and Michelle H. Browdy of Kirkland & Ellis, Chicago, Illinois, for appellees Brown & Williamson Tobacco Corporation and The American Tobacco Company.

Ross H. Sidney and Henry A. Harmon of Grefe & Sidney, Des Moines, and John C. Monica, Craig E. Proctor, and Catherine M. Castelluccio of Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri, for appellees Lorillard Tobacco Company and Lorillard Incorporated.

J. Michael Weston and Brenda K. Werner of Moyer & Bergman, P.L.C., Cedar Rapids, and Bruce G. Merritt and Eric Falkenstein of Debevoise & Plimpton, New York, New York, for appellee The Council for Tobacco Research.

Brent B. Green and Gregory R. Brown of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, for appellees United States Tobacco Company and UST, Inc.

Joseph R. Gunderson of Dreher, Simpson & Jensen, Des Moines, and Fred M. Weiler and Yvonne Look of Davis & Gilbert, New York, New York, for appellee Hill & Knowlton, Inc.

John A. McClintock, Chester C. Woodburn III, and David L. Brown of Hansen, McClintock & Riley, Des Moines, and John Nyhan, Jay Henneberry, and Suzanne Cate Jones of Chadbourne & Parke, LLP, Los Angeles, CA, for appellee British American Tobacco Co., Ltd.

Considered by LARSON, P.J., and CARTER, LAVORATO, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The Attorney General of the State of Iowa filed a ninety-nine page petition in district court against twenty-two defendants collectively identified as the tobacco industry. The State claims it has been damaged because it incurred, and continues to incur, substantial costs providing health care and other services to citizens and employees of the state who have suffered or will suffer from tobacco-related injuries, diseases, and illness. The petition identified nine separate counts.

Certain defendants filed a motion to dismiss the petition. Following hearing on the motion, the district court dismissed four of the nine counts. We granted the State's application for interlocutory appeal. *See* Iowa R.App. P. 2. On appeal, the State challenges the dismissal of count II (civil liability for deception), count III (voluntary assumption of a special duty), and count VII (indemnity). The State does not contest the dismissal of count IV (unjust enrichment/restitution) and has waived its right to challenge the court's ruling on this count. *See* Iowa R.App. P. 14(a)(3); *Smith v. CRST Int'l, Inc.*, 553 N.W.2d 890, 895 (Iowa 1996).

I. *Scope of Review.*

■ On an appeal from the dismissal of claims under Iowa Rule of Civil Procedure 104(b), our review is closely circumscribed. We assess the petition in the light most favorable to the plaintiff and resolve all doubts and ambiguities in plaintiff's favor. *Below v. Skarr*, 569 N.W.2d 510, 511 (Iowa 1997). "To sustain such a motion, the movant must show no state of facts is conceivable under which the plaintiffs might show a right of recovery." *Id.*

II. *Background.*

A brief summary of the allegations contained in the petition as described in the State's reply brief, shows:

The petition alleges a long and detailed history of the defendants' misrepresentations and concealment of the truth about the health hazards of tobacco. The defendants have known since the 1930's of the health hazards of cancer, coronary heart disease, emphysema, and stroke due to smoking. Beginning forty years ago, defendants conspired to suppress and made every effort to hide scientific evidence of the deadly health consequences

of tobacco and nicotine. Following the initial "Big Scare" about tobacco causing cancer in 1953, the defendants created the Tobacco Industry Research Committee to manipulate information about tobacco-related research. The defendants' "Frank Statement" of 1954, published in several newspapers in Iowa, misrepresented the knowledge available about tobacco's effects and promised to conduct valid research and report honestly the results. The defendants breached those promises virtually immediately and have continued to do so for over forty years. The defendants continued to deny and attack the evidence that smoking caused cancer, falsely represented their own research, and suppressed information that would have shown the actual consequences of smoking. The defendants agreed not to conduct individual research and to rely on their captive Council for Tobacco Research to promote "favorable" research and suppress negative research. Specific wrongful acts included making false testimony to Congress, reporting false information to the surgeon general, publishing false reports, making a "gentleman's agreement" to suppress research, using lawyers and attorney-client privilege to hide the results of research projects, firing scientists, closing laboratories, threatening legal action against scientists, and concealing studies if the results were unfavorable, cancelling research on safer cigarettes, deceiving the public about the addictiveness and health effects of nicotine, and manipulating the level of nicotine to enhance addiction. The defendants have targeted slogans, magazines, glamorous images, and sexual themes at children to addict them and ensure their future markets.

Defendants directed their acts at and intended to have an impact on the State. The defendants acted purposefully knowing that when consumers use cigarettes as intended, Iowans would be certain to suffer tobacco-related diseases and the State itself would be injured. As a result the State was obligated to pay and has paid hundreds of millions of dollars to provide medical care for tobacco-related illnesses.

In their motion to dismiss, the defendants argue (a) the State's exclusive remedy to recoup Medicaid costs is under Iowa Code section 249A.6 (1997), and (b) the State's claim to recover damages is for remote and derivative injuries that are nonrecoverable. The trial court found at common law the State had no right to recover Medicaid costs from the recipient or third parties and therefore the State's exclusive remedy for recovery of Medicaid costs was under section 249A.6. The court also found the alleged torts were committed against the Medicaid recipients and State employees, not the State. Because the injuries are derivative and remote, the court concluded the State could not bring a direct action against the defendants.

We will first consider if section 249A.6 provides an exclusive remedy to the State to recover medical costs thus prohibiting a common law indemnity claim (count VII). We will then consider if the damages claimed by the State in counts II, III, and VII are remote and derivative and thus prohibited.

### III. Section 249A.6.

Iowa Code section 249A.6 provides in part:

1. When payment is made by the department for medical care or expenses through the medical assistance program on behalf of a recipient, the department shall have a lien, to the extent of those payments, upon all monetary claims which the recipient may have against third parties. A lien under this section is not effective unless the department files a notice of lien with the clerk of the district court in the county where the recipient resides and with the recipient's attorney....

....

5. For purposes of this section the term "third party" includes an attorney, individual, institution, corporation, or public or private agency which is or may be liable to pay part or all of the medical costs incurred as the result of injury, disease or disability by or on behalf of an applicant for or recipient of assistance under the medical assistance program.

6. The department may enforce its lien by a civil action against any liable third party.

Section 249A.6 was enacted in 1979 to permit the State to enforce its right of subrogation against persons who were legally liable to a recipient for medical expenses incurred under the provisions of the Medical Assistance Act, a joint federal and state program. *See* 42 U.S.C. § 1396a(a)(25). Under this statutory scheme, the State can proceed

> down one of two avenues for the recovery of medical assistance benefits paid for an individual when the legal liability for injury rests with another individual: (1) action directly against the tort-feasor; or (2) claim against the settlement or judgment recovered by the medical assistance recipient.

*Department of Human Servs. v. Brooks,* 412 N.W.2d 613, 615 (Iowa 1987). In *Brooks,* we refused to allow the State to make a common law claim for reimbursement against the recipient's conservatorship. *Id.* at 616. We recognized a recipient of public assistance was not obligated at common law to reimburse the State for assistance provided. *Id.* at 614. Section 249A.6(1) was the legislature's limited response to the common law rule. *Scott v. State ex rel. Dep't of Human Servs.,* 438 N.W.2d 834, 835 (Iowa 1989).

Under the statute, the department's right to reimbursement depended on subrogation principles. *Bales v. Warren County,* 478 N.W.2d 398, 400 (Iowa 1991). If the department elects to pursue its claim against the tortfeasor directly, the department's claim is subject to any defense that might be asserted against the recipient. *Id.* at 401. After section 249A.6(1) was amended in 1989, the department was subrogated to the extent of those payments, to *all* monetary claims which the recipient may have against third parties. *Hill v. State ex rel. Dep't of Human Servs.,* 493 N.W.2d 803, 807 (Iowa 1992). The amendment specifically provided the failure of the recipient to state a claim for recovery of medical expenses did not defeat the department's right of subrogation if there was *any* recovery on the recipient's claim. *Id.* In 1993 the legislature deleted reference to "subrogation" and instead provided the

department would have a "lien" on all monetary claims which the recipient may have against third parties. 1993 Iowa Acts ch. 180, § 50.

### A. Statutory Construction.

The district court applied rules of statutory construction in its determination that section 249A.6 was the State's exclusive remedy to recover Medicaid costs. ·The court concluded:

> The Iowa Supreme Court has long recognized the legal principle that statutes creating rights and liabilities that did not exist at common law provide the exclusive remedy for enforcing those rights and liabilities.

*See Van Baale v. City of Des Moines,* 550 N.W.2d 153, 156 (Iowa 1996); *Cole v. City of Muscatine,* 14 Iowa 296, 298–99 (1862). Because there was no right to recover Medicaid costs from the recipient or third parties at common law, the district court found section 249A.6 was the State's exclusive remedy. In support the district court cited *Brooks* where we stated:

> The recipient of public assistance was not obligated at common law to reimburse the State for assistance provided. The State could not institute suit against the recipient *or others* to recover amounts expended for the recipient.

*Brooks,* 412 N.W.2d at 614 (citations omitted) (emphasis added).

The State argues a converse rule of statutory construction applies; that is, where a statute merely prescribes a new remedy for a preexisting right or liability, the new remedy is deemed cumulative, unless the statute shows an intention to abrogate or supersede the old remedy. *See Lodge v. Drake,* 243 Iowa 628, 631, 51 N.W.2d 418, 419–20 (1952). The State claims a common law right to indemnity predates section 249A.6.

### B. Common Law Indemnity.

The State claims the Restatement of Restitution provides a sufficient basis for the State's common law claim of indemnity. Under the provisions of the Restatement:

> A person who, in whole or in part, has discharged a duty which is owed by him

but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

Restatement of Restitution § 76, at 331 (1936).

In *Hunt v. Ernzen,* 252 N.W.2d 445, 448 (Iowa 1977), we cited section 76 of the Restatement of Restitution in support of indemnification of the original tortfeasor. We recognized indemnity "is founded on equitable principles; it is allowed where one person has discharged an obligation that another person should bear; it places the final responsibility where equity would lay the ultimate burden." *Hunt,* 252 N.W.2d at 447–48 (citation omitted). In *Hunt,* a tortfeasor, who was held liable for injuries caused by him and those injuries caused by the treating hospital, was allowed to seek indemnity for the latter injury. Because the original tortfeasor was held liable to the injured person by operation of law, he could claim indemnity against the hospital.

In *Peters v. Lyons,* 168 N.W.2d 759, 766–68 (Iowa 1969), we recognized a common law right of indemnity in certain situations. We stated:

> The breach of nondelegable duties may constitute a basis for an action in indemnity against a third party who creates a dangerous condition.... One who is liable only by reason of a duty imposed by law for the consequences of another's negligence may recover over against the active perpetrator of the wrong.

*Peters,* 168 N.W.2d at 766. We held an owner of a dog who was not guilty of a wrong but was statutorily liable for damages caused by the owner's dog, may be indemnified by the party guilty of the wrong that caused the loss. *Id.* at 768.

■ We agree with the State that Iowa recognized common law indemnity before the adoption of section 249A.6 in 1979. However, common law indemnity is limited to circumstances where there is an express contract, vicarious liability, or a breach of an independent duty of the indemnitor to the indemnitee. *Daniels v. Hi–Way Truck Equip., Inc.,* 505 N.W.2d 485, 490 (Iowa 1993). Both *Hunt* and *Peters* were classic cases involving vicarious liability. Indemnity was allowed because the law imposed liability on one person for the actionable conduct of another.

C. Discussion.

■ Here, the State urges the discharge of the statutory obligation to pay Medicaid benefits entitles it to seek indemnification from the defendants. We agree the purpose of the federal requirement in 42 U.S.C. § 1396a(a)(25) and Iowa Code section 249A.6 was to authorize and enhance the recovery of medical payments from third parties responsible for the injury that required medical services. Section 249A.6(6) expressly allows a direct action against a liable third party. However, the State is not pursuing a lien remedy to recover medical payments under section 249A.6. A statutory cause of action under section 249A.6 was not pled in the petition. The State made no subrogation claim against the defendants and has no common law right to indemnity. The State's exclusive remedy for recovery of these costs is under section 249A.6. Although the statutory provisions to enforce the remedy may be impractical, it is the only remedy provided.

IV. *Remote and Derivative Claims.*

■ The district court dismissed counts II, III, and VII because "the State cannot recover damages caused by defendants because the injuries are derivative and too remote." We agree. Under Iowa law, an employer cannot recover in a direct action against a third party for remote and derivative injuries resulting from a third-party's conduct towards the employee. *Anderson Plasterers v. Meinecke,* 543 N.W.2d 612, 613 (Iowa 1996); *see also Eddy v. Casey's Gen. Store, Inc.,* 485 N.W.2d 633, 636–37 (Iowa 1992) (absent dram shop act, link between seller of alcohol and party injured by drunk driver is too remote to impose liability).

■ The remoteness doctrine "is not based upon a factual inquiry to determine whether the damages claimed were foreseeable or whether they were a proximate cause; rather it is a legal doctrine incorporating public policy considerations." *Kraft Chem. Co. v. Illinois Bell Tel. Co.,* 240 Ill. App.3d 192, 181 Ill.Dec. 170, 172, 608 N.E.2d

243, 245 (1993). The remoteness doctrine was applied to prevent Blue Cross and Blue Shield of Minnesota (Blue Cross) from bringing a direct tort action against tobacco companies to recover for injuries to its consumers, the smokers. *State v. Philip Morris, Inc.*, 551 N.W.2d 490, 495 (Minn.1996). The Minnesota Supreme Court found that while it believed Blue Cross had been injured, the tort was too remote for Blue Cross to recover upon it. *Id.* The court stated there needed to be a "closer connection between the injury and the alleged tortfeasor." *Id.* In the matter before us, a failure to apply the remoteness doctrine would permit unlimited suits to be filed. Any employer or insurer who paid medical expenses of an employee or insured injured by smoking would have a claim against the tobacco industry. We are not inclined to open the proverbial flood gates of litigation to such an extent.

### V. *Conclusion.*

We conclude the trial court did not err in dismissing counts II, III, and VII of the State's petition.

**AFFIRMED.**